UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **William Kidd, Jr.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**Experian Information Solutions, Inc.,** *and* **WebBank Corporation,**<br><br>*Defendants.* | Case Number:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **William Kidd, Jr.**, ("**Mr. Kidd**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Experian Information Solutions, Inc.** ("**Experian**"), and **WebBank Corporation** ("**WebBank**") (jointly, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Kidd against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. The Defendants are subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

4. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Mr. Kidd

5. **Mr. Kidd** is a natural person residing in the City of Wesley Chapel, Pasco County, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. §1681a(c).

### Experian

6. **Experian** is an Ohio corporation with a primary business address of **475 Anton Boulevard, Costa Mesa, CA 92626**.

7. Experian is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.**

8. Experian is a nationwide *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f) in that, for monetary fees, dues, or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third

parties, and which use means or facilities of interstate commerce, specifically including the mail and internet, for the purpose of preparing or furnishing consumer reports. As a CRA, Experian is aware of its obligations under the FCRA.

### WebBank

9. **WebBank** is a Utah corporation with a primary business address of **215 South State St., Suite 1000, Salt Lake City, UT 84111.**

10. WebBank is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

### FACTUAL ALLEGATIONS

11. In December 2020, Mr. Kidd obtained a charge account from Fingerhut, an online home goods store, through WebBank. (the "**WebBank Account**").

12. Mr. Kidd opened the account for the express purpose of helping to improve his credit scores so that he could qualify for a home loan in the near future.

13. In order to generate recent positive payment history to facilitate purchasing a new home, Mr. Kidd made small purchases, and then shortly after, he paid the account in full.

14. Sometime in early 2021, Mr. Kidd learned that WebBank was claiming that he was past due on his WebBank Account.

15. As soon as Mr. Kidd learned of this, he contacted a customer service representative at WebBank and asked why, having paid the account in full, WebBank was claiming an amount was owed.

16. The representative assured Mr. Kidd that WebBank would update its records and its reporting to reflect no late payment history.

17. Despite this, WebBank reported to Equifax that the account was 30 days late in March 2021 and 60 days late in April 2021. **SEE PLAINTIFF'S EXHIBIT A.**

18. WebBank reported to Experian that the account was 30 days late in November 2020 and 60 days late in December 2020. **SEE PLAINTIFF'S EXHIBIT B.**

19. WebBank also reported a comment for April 2021 that the first payment had never been received. *Id.*

20. In August 2021, Mr. Kidd disputed the accuracy of WebBank's information to Experian, stating that the two late payments were erroneous and the account should report as never late.

21. Experian then sent WebBank an *Automated Consumer Dispute Verification* request ("**ACDV**") through a system known as e-OSCAR, asking WebBank to make a reasonable investigation into the dispute.

22. WebBank responded to the ACDV, stating that its tradeline was accurate but required several updates.

23. WebBank's supposed investigation concluded that its reports were accurate, with no need for update or modification, confirming as accurate that while the account was opened in December 2020, it was somehow more than 30 days past due in November 2020 and more than 60 days past due for December 2020. *Id.*

24. As is plainly obvious, an account opened in December 2020 could not possibly be more than 30 days late *the month before it was opened*.

25. WebBank, or Experian, also altered tradeline data to indicate the account had been "First reported" in September 2020 while also reflecting that the account was opened in December 2020. *Id.*

26. WebBank failed to report the account was "disputed by consumer."

27. In September 2021, Mr. Kidd again disputed the accuracy of WebBank's information to Experian, stating that the two late payments were erroneous and the account should report as never late.

28. Experian sent WebBank another ACDV, and it again confirmed its tradeline as accurate, with no need for update or modification. **SEE PLAINTIFF'S EXHIBIT C.**

29. WebBank again failed to report that the account was "disputed by consumer."

30. The WebBank tradeline remained the exact same on Mr. Kidd's Experian credit report except for an added notation: "Your statement: NEVER LATE. ACCOUNT WAS PAID AS AGREED." *Id.*

31. If a furnisher of data to a CRA, like WebBank, confirms disputed information as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.* 827 F.3d 1295, 1303 (11th Cir. 2016).

32. WebBank had no information to suggest that its reported data was true, and, in fact, was in possession of data establishing the opposite – there was no possibility that payment was 30 days past due in November 2020 and 60 days past due in December 2020 because the account was opened in December 2020.

33. Further, WebBank failed to update its report to disclose that its report was disputed by the consumer. WebBank had no reasonable basis to believe Mr. Kidd *did not* dispute the accuracy of its reports.

34. The failure to update a report to reflect its "disputed" status in and of itself violates the FCRA. *See Saunders v. Branch Banking and Trust Company of Virginia* 526 F.3d 142 (4th Cir. 2008).

35. WebBank should have reported the account with a Metro 2 **Compliance Condition Code** ("**CCC**") of "XB," which translates to "account information disputed by consumer."

36. Most credit scores, including almost all versions of FICO, disregard a tradeline containing a compliance condition code of XB from a consumer's credit score computation. Had WebBank simply reported the proper CCC, it would have prevented Mr. Kidd's FICO credit scores from being adversely impacted, although any human reader of the report would still see the improperly included late payment history.

37. WebBank's failure to disclose that the Debt was currently disputed materially damaged Mr. Kidd's credit scores.

38. The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Ms. Kidd suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

39. For plainly obvious reasons, WebBank failed to make a reasonable investigation into Mr. Kidd's dispute. No reasonable investigation could have determined that the payment history concerning the account was accurate, as it was literally impossible.

40. Experian also failed to make a reasonable investigation into Mr. Kidd's disputes.

41. Upon receipt of the ACDV responses, Experian utilized an automated system which made rudimentary checks of tradeline data between what WebBank

had reported and the data contained in Experian's own file on Mr. Kidd, *e.g.*, his name, address, date of birth, and Social Security number.

42. Experian's automated systems do not, however, even *attempt* to analyze if logically impossible information is reported.

43. Experian's systems are programmed to assume data furnished by its paying customers, like WebBank, is accurate, even if the data is, on its face, obviously false.

44. Metro 2 standards have been adopted by large, nationwide CRAs like Experian and are supposed to ensure uniformity of credit reporting across different CRAs and provide a framework for credit scores to evaluate consumer data.

45. Metro 2 standards are promogulated by the *Consumer Data Industry Association* ("**CDIA**") and prohibit the reporting of past-due payment history prior to the establishment of the account.

46. Credit scores produced by the Fair Isaac Corporation, commonly referred to as FICO scores, are utilized in roughly 90 percent of consumer lending decisions and are thus the leading credit scores used in the USA. FICO scores utilize data reported by CRAs and furnishers which calculates a consumer credit score on the assumption that data is furnished in compliance with Metro 2 standards.

47. The failure to adhere to the Metro 2 reporting standards can adversely affect a consumer's FICO score.

48. The failure to adhere to the Metro 2 format, and/or the failure to follow the guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n(a). *See Gillespie v. Experian Info. Servs., LLC.*, No. 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008).

49. Despite WebBank making logically absurd and impossible reports, and WebBank's data being out of compliance with Metro 2 standards, Experian accepted WebBank's data without question and incorporated it into Mr. Kidd's file.

50. Experian's rubber-stamping of WebBank's ACDV responses was likewise unreasonable. Courts in this district have recognized for at least 35 years that it is inherently unreasonable to rely solely upon a data furnisher's verification of accuracy when a CRA investigates a consumer dispute. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [parties] … The [credit reporting] agency itself clearly bears at least some burden of evaluation." *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

51. Mr. Kidd's situation makes transparent the systemic flaws and failures in Experian's automated dispute resolution process which relies solely on

ACDV responses. Data furnishers – who pay revenue to Experian monthly – are presumed to be correct, even if the furnisher's data is obviously impossible. The consumer, whom Experian receives no revenue from, is presumed to be wrong.

52. Experian continued to include the erroneous WebBank data in reports which Experian sold concerning Mr. Kidd.

53. Mr. Kidd has suffered denials of credit, lost financial opportunities, and significant emotional distress and aggravation as a result of the Defendants' cavalier actions and failures.

54. Mr. Kidd has hired the undersigned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FCRA – *Experian*

55. Mr. Kidd incorporates paragraphs 1 – 54 as if fully stated herein.

56. Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation regarding the disputed WebBank tradeline, accepting logically flawed and impossible information as accurate in responses received from automated ACDVs and making no investigation of its own, despite WebBank's reports containing clearly flawed data, such as an account being reported as 30 days late before it was even opened.

57. Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy by including

WebBank's false and inaccurate data in Mr. Kidd's credit report, which it sold to at least two different creditors.

58. Experian's conduct was willful and intentional, or, alternately, was performed with a reckless disregard for its duties under the FCRA, and its policies could easily, and reasonably, be foreseen to cause harm.

59. As a result of its conduct, Experian is liable to Mr. Kidd pursuant to the FCRA for statutory damages of up to $1,000 for each occurrence, and other relief.

**WHEREFORE,** Mr. Kidd respectfully requests that this Honorable Court enter judgment against Experian for:

a. The greater of statutory damages of **$1,000.00** per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Kidd's unspecified actual damages for loss of credit opportunities, inability to obtain needed loans at lower interest rates, higher interest rates on other accounts, and related economic and non-economic injuries, pursuant to 15 U.S.C. §1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA – *WebBank*

60. Mr. Kidd incorporates paragraphs 1 – 54 as if fully stated herein.

61. WebBank violated **15 U.S.C. § 1681s-2(b)** when it failed to update, modify, or correct its reports after receiving notices of dispute from Experian. Specifically, WebBank failed to conduct reasonable investigations when it erroneously concluded: (a) that Mr. Kidd's account had delinquent payment history; (b) that the delinquent payment history antedated the opening of the account by more than a month; (c) that the account had been "First reported" September 2020 when it was opened in December 2020; (d) that in April 2021, the first payment had not been received; and, (e) that this information was not disputed by Mr. Kidd and thus did not require disclosure of his dispute.

62. The information that WebBank reported and verified was clearly inaccurate and this information was disseminated to multiple parties.

63. WebBank's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. Kidd.

64. As a result of its conduct, WebBank is liable to Mr. Kidd pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Kidd respectfully requests that this Honorable Court enter judgment against WebBank for:

a. The greater of statutory damages of **$1,000.00** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Kidd's actual damages for loss of credit opportunities and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Mr. Kidd hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **October 20, 2021**, by:

**SERAPH LEGAL, P. A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
FL Bar # 1015954
BMorgan@SeraphLegal.com

/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.
FL Bar # 118103
TBonan@SeraphLegal.com

1614 N. 19th St.
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

**ATTACHED EXHIBITS LIST**
A	Plaintiff's Equifax Consumer Disclosure, September 24, 2021 – Excerpt
B	Plaintiff's Experian Consumer Disclosure, September 24, 2021 - Excerpt
C	Plaintiff's Experian Consumer Disclosure, October 4, 2021 - Excerpt